UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALEXANDER PERVYSHEV                        CIVIL ACTION

VERSUS                                     NO. 05-4040

INTERORIENT NAVIGATION CO.,                SECTION "R" (2)
LTD., INC., INTERORIENT SHIP
MANAGEMENT, INC.(U.S.A.),
INTERMARINE, L.L.C., & TRANSCAN
MARINE CONSULTANTS & SURVEYORS, INC.

**ORDER AND REASONS**

Before the Court is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure brought by defendant Industrial Maritime Carriers, Inc. (IMC). For the following reasons, the Court GRANTS IMC's motion.

**I.   BACKGROUND**

Plaintiff Alexander Pervyshev alleges that he was employed by INC Interorient Navigation Hamburg GMBH & Co. KG. (INC Hamburg) as Chief Mate. In that capacity, he was assigned to and worked aboard the M/V Condock III. IMC was the time charterer of the M/V Condock III, which was allegedly owned by Transcom Trading Limited. Pervyshev asserts that, in January 2004, while

the ship was docked at Barranquilla, Colombia, he sustained a "severe injury to his right foot" as a result of discharge operations at the port. (R. Doc. 1, at 3). More specifically, plaintiff alleges that, in accordance with his duties as cargo officer, he went down to the hold of the ship to inspect its cargo. (*Id.*). Concurrently, stevedores from the firm Naves, S.A., who had been hired by IMC to discharge cargo while the ship was in port, were operating the ship's crane to unload long length tubes. (*Id.*). At some point, the crane operators lost control of the tubes, which fell approximately thirty three feet into the hold of the ship. (*Id.*). Upon hearing "watch out," plaintiff jumped down approximately twelve feet to avoid the falling tubes. (*Id.*). As a result, plaintiff asserts that he injured his right foot. (*Id.*). He was transported to a hospital in Colombia, where his foot was placed in a cast, and he was ordered to rest for seven days. (*Id.* at 4). Plaintiff contends that the captain of the M/V Condock III, Robert Michlewicz, ignored the hospital's order and required plaintiff to resume his customary duties aboard the ship. (*Id.*). About one week later, x-rays taken at a Venezuela hospital revealed that plaintiff had sustained a fractured heel from his fall. (*Id.*).

Pervyshev filed his original complaint against: Interorient Navigation Company and Interorient Ship Management, as his Jones

Act employers and owners of an unseaworthy vessel; Intermarine, as the time charterer allegedly in control of an unseaworthy ship; and Transcan Marine Consultants & Surveyors, as the employer of George Rigas, who allegedly served as Intermarine's representative aboard the M/V Condock III.  Pervyshev voluntarily dismissed Transcan on May 18, 2006.  (R. Doc. 20).  In his second amended complaint, Pervyshev dismissed Intermarine and added IMC as a defendant.  Pervyshev alleges that IMC is liable as the entity with operational control of and the time charterer of an unseaworthy vessel, as plaintiff's Jones Act employer, and as a third party for the negligence of its employees under general maritime law.  (R. Doc. 22, at 2).  In the third amended complaint, Pervyshev added INC Hamburg as a defendant, asserting that it was his Jones Act employer and owner of an unseaworthy vessel.  IMC now moves for summary judgment on all of plaintiff's claims against it.

**II.   LEGAL STANDARD**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for

the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

As an initial matter, based on his response to defendant's motion for summary judgment, plaintiff apparently abandons his

claims against IMC under the Jones Act and for unseaworthiness of the vessel.  These claims are without merit, in any case.  First, the Jones Act, 46 U.S.C. § 688, provides an injured seaman with a remedy for negligence against only his employer.  *See Rich v. Bud's Boat Rental, Inc.*, 1997 WL 543093, at *1 (E.D. La Sept. 3, 1997) (citing *Hopson v. Texaco, Inc.*, 383 U.S. 262 (1966)).  Plaintiff alleges that he was an employee of Interorient Navigation, not IMC, at the time of his accident.  (R. Doc. 1, at 2).  As a result, Pervyshev's claim under the Jones Act fails since he was not employed by IMC.  Second, IMC is not liable for the alleged unseaworthiness of the vessel because the Fifth Circuit has held that a time charterer does not assume liability for the unseaworthiness of a vessel unless it can be shown that the time charterer intended to assume responsibility for the vessel's seaworthiness.  *See Mallard v. Aluminum Co. of Canada, Ltd.*, 643 F.2d 236, 242 (5th Cir. 1981).  Plaintiff has failed to make such a showing.  Moreover, the terms of the time charter agreement reflect that IMC did not assume any responsibilities outside of those assigned under a traditional time charter agreement, which do not include responsibilities for the seaworthiness of the vessel.

   Resolution of plaintiff's remaining claim for general maritime negligence turns on whether IMC retained operational

control over the stevedores who were loading and unloading cargo while the M/V Condock III was docked at the port of Barranquilla, Colombia. As the Fifth Circuit has stated, "[A]lthough the charter party contract precludes visiting liability upon the time charterer for the owner/operator's negligence, it does not preclude holding the time charterer liable for the negligent acts of parties performing tasks over which the time charterer had operational control." *Zepherin v. Conoco Oil Co., Inc.*, 884 F.2d 212, 213 (5th Cir. 1989).

Plaintiff first asserts that the defendant had operational control of the cargo operations by virtue of Clause 8 of the charter agreement between IMC and the vessel's owners. It states in pertinent part: "The Captain (although appointed by the owners), shall be under the orders and directions of the charterers as regards employment and agency and charterers are to load, lash, tally, stow, and trim, unlash and discharge the cargo at their expense under supervision of the Captain." (R. Doc. 45, at 4). Clause 8 is a standard clause in Time Charter agreements and the Fifth Circuit has interpreted it to mean that it "does not shift operational control over cargo operations, and therefore responsibility for the actions of independent stevedores from the shipowner to the time charterer." *Woods v. Sammisa*, 873 F.2d 842, 856 (5th Cir. 1989), *cert. denied*, 493

6

U.S. 1050 (1990) (discussing the holding in *D/S Ove Skou v. Hebert*, 365 F.2d 341, *cert. denied*, 400 U.S. 902 (1970)).  The Fifth Circuit has also stated: "[Clause 8] does not give to Time Charterer any operational control over [stevedores'] activities.  Rather, these charter party provisions are essentially a specification of the party - owner or charterer - upon whom the ultimate financial cost rests for any one or more of the activities."  *Ove Skou*, 365 F.2d at 351.  As the *Woods* court summarized, "[C]onsidering solely the issue of the contractual allegation of responsibility between the parties, *Ove Skou* compels the conclusion that, *absent evidence to the contrary*, the time charterer bears no responsibility to the owner/operator or third parties for the negligent act of the loading stevedore."  *Woods*, 873 F.2d at 857-58 (emphasis added).[1]

Plaintiff therefore must do more than simply point to Clause 8 in order to show that the time charterer did in fact exercise some amount of operational control over the loading operation in Barranquilla.  In *Woods*, the court held that Clause 8 "does not preclude holding the time charterer liable for its *own* negligent acts."  *Id.* at 857 (emphasis added).  There, the court found

---

[1] Although other circuits have declined to follow *Ove Skou*, the Fifth Circuit has stated that "the holding and reasoning of *Ove Skou* are alive and well in this circuit, and with good reason."  *Woods,* 873 F.2d at 857 n.18.

7

evidence that the time charterer had exerted operational control over the stevedores because the charterer gave multiple directives on the loading of cargo and then changed the ship's itinerary, which affected the safety of discharge operations. *Id.* Here, plaintiff provides no evidence that supports its contention that IMC exercised operational control over cargo operations at the time plaintiff was injured. More particularly, plaintiff fails to submit any evidence showing that IMC exerted any influence over the stevedores in Barranquilla or that an IMC representative was even present in Barranquilla when plaintiff was injured. By contrast, IMC presents evidence that the vessel did not dock in Barranquilla at IMC's direction and that it was plaintiff, along with the ship's captain, who was in charge of cargo operations at the Colombian port. (*See* R. Doc. 6, at 29; R. Doc. 42-4, at 42). IMC's hiring of the stevedores, without more, is insufficient to show operational control. *See Ove Skou*, 365 F.2d at 351 ("Although the charterer is to secure and pay for such port activities as pilotage, towage, port charges, including arrangements for loading and discharging of cargo, such activities if conducted by the ship or crew do not become those for which the time charterer has an operational responsibility."). Thus, the absence of evidence of affirmative actions by IMC to exert some degree of operational control during

the operation in Barranquilla is fatal to plaintiff's attempt to hold IMC liable for the acts of its stevedores under Fifth Circuit law.  Finally, plaintiff's bare allegation that IMC can be held liable for hiring stevedores who were known to be incompetent or of ill-repute fails in light of the unrebutted statement of Georgios Rigas, a marine consultant/surveyor who monitored cargo aboard the M/V Condock III, that he knew the stevedores "to be both competent and reputable."  (R. Doc. 42-4, at 9).

Because plaintiff plainly has not carried his burden of showing specific facts that demonstrate a genuine issue for trial, summary judgment is appropriate on plaintiff's general maritime negligence claim against IMC.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS IMC's motion for summary judgment.

New Orleans, Louisiana, this 15th day of August, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE